# 270    OAKLAND PAVING CO. v. RIER.    [Sup. Ct.

[No. 5181.]

## OAKLAND PAVING COMPANY v. CHARLES RIER
### ET AL.

IMPROVEMENT OF STREETS IN OAKLAND. — The twenty-eighth section of the act to authorize the improvement of streets in the City of Oakland, which provides that the Council shall have full power to improve Broadway Street in such manner as it may deem proper, does not dispense with the necessity of the passage of a resolution of intention, and its publication, before an improvement can be made on Broadway.

IDEM.—Under said section, after a resolution of intention to improve Broadway Street has been passed by the Council, and published, so that jurisdiction is acquired, the Council may order such portion of the proposed work to be done as it may deem proper, or may leave the amount of work to be done on the crossings and culverts to the determination of the Street Superintendent.

POWER OF LEGISLATURE OVER STREETS OF A CITY. — The Legislature, in providing for the improvement of the streets of a city, may adopt one mode for a part of the streets, and a different mode for the remainder, and may authorize the levy of an assessment per front foot to pay for either mode of improvement.

IMPROVING STREET IN A CITY.—If, in improving a street in a city, the specifications require work not mentioned in the resolution of intention, it does not vitiate the assessment if such additional work is not mentioned in the contract, and it does not appear that it was done, or that any charge was made for it.

IDEM.—In improving the street of a city, if the resolution of intention calls for "additional macadamizing," the specifications may provide for lifting the rock on the roadway, and relaying a part with new rock, and this is "additional macadamizing."

ACCEPTING IMPROVED STREET IN OAKLAND. — The twentieth section of the act for improving the streets of Oakland, which provides that when a street is constructed to the satisfaction of the Council and Marshal it shall be accepted, and that thereafter it shall be improved by the city, requires such acceptance of the street, to the full width of the street, when improved under regulations adopted by the Council. Such regulations must specify, among other things, the character of the work to be done, before the street can be accepted. An acceptance of work done on a street is not sufficient to make the street an accepted street.

ESTOPPEL.—If a corporation attempts to confer power on its President to contract with a city for the improvement of a street, and the power is defective, but the contract (in form) is made with the corporation, the work is done by the corporation, the assessment is issued to the corporation, and suit for the work is brought by the corporation, both the city and corporation are estopped to deny the due execution of the contract, and the lot owner when sued for the assessment cannot be heard to allege that the contract was not executed by the corporation.

APPEAL TO CITY COUNCIL IN CASE OF STREET.—If the City of Oakland contracts with a corporation, through its President, for the improvement of a street, and the President has not full authority from the corporation to make it, the remedy of the lot owner is by appeal to the City Council.

CREATION OF AGENT BY A CORPORATION.—A resolution passed by the Board of Trustees of a corporation, conferring on its President the full power of the company in reference to municipal street work, empowers the President to contract with the city on behalf of the corporation to improve a street.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

On the 9th day of December, 1872, the City Council of Oakland passed a resolution of intention to improve Broadway Street, between Water Street and Fourteenth Street. This resolution is in the opinion. It was published for the requisite time. On the 23rd of said month, the Council passed an ordinance ordering said work done, and another providing for plans and specifications. January 20th, amendatory ordinances were passed, and on the 22nd of January, notices were posted and published inviting proposals for the work. T. L. Walker, as President of and on behalf of the Oakland Paving Company, the plaintiff, a corporation, sent in a proposal, and the Council awarded the work to said corporation. On the 12th of February, a written contract was entered into between the plaintiff, by Walker, as its agent, and the city, for the performance of the work. The work was performed by the plaintiff, and on the 16th of September, 1873, the Marshal issued to the plaintiff a warrant, with assessment and diagram attached, authorizing it to demand and receive the assessments.

The statutes authorizing the City of Oakland to improve its streets are found Stats. 1863–4, p. 33; Stats. 1869–70, p. 443. These require a resolution of intention to improve to be passed by the Council, and published. After the publication of such resolution, sec. 3 provides that the owners of more than half the frontage of lots fronting on the work proposed to be done (excepting work done on Broadway) may, within ten days, make written objections to the work, and such objections shall be a bar to further proceedings on the work for a period of six months. Before passing an ordinance for the work, plans and specifications are to be furnished the Council by the Marshal, if required.

There was a street railroad on Broadway, and while the resolution of intention calls for improvement by additional macada-

mizing of Broadway from Fourteenth Street to the wharf in Water Street, the contract and specifications restrict said work to that portion of the street lying between the curb thereof and a point two feet outside of the outer rail of the railroad track or tracks thereon.

The specifications required that two culverts should be constructed at each crossing, " where not already laid and in good order "; also, that four cross-walks should be constructed at each crossing, " where the same are not already laid and in good order."

The resolution of intention provided for improvement by additional macadamizing, etc. The specifications provided " that the rock now upon the roadway shall be lifted, and such part as accords with these specifications shall be relaid with new rock."

It was contended by appellant's counsel, on the trial, that as sec. 28 relieved Broadway Street from the general provisions of the act, that, therefore, it did not come under those provisions which authorized an assessment upon lots by front foot to pay for the improvement. T. L. Walker was President of the plaintiff, and some two years before this contract was let, the Board of Directors of the plaintiff had passed a resolution conferring on him the full powers of the corporation in reference to municipal street work. Broadway, between Fourth Street and Tenth Street, had been macadamized in 1864-5, and the Council had afterwards, upon an appeal to that body from the Marshal's acceptance of the work, approved of the assessment, and accepted the work done. In 1864-5 only the roadway had been improved, not the sidewalks. This was an action to enforce a lien on a lot of the defendant fronting on Broadway, between Fourth and Tenth Streets, for an assessment under the contract. The plaintiff recovered judgment, and the defendant appealed. The other facts are stated in the opinion.

*W. H. & J. R. Glascock*, for the Appellant.

The resolution of intention was the letter of authority in the premises, and the City Council had no power to restrict nor enlarge the same. ( *Whitmore* v. *City of Stockton*, 40 Cal. 554; *Dougherty* v. *Hitchcock*, 35 Cal. 512.)

The terms "improve," "improved," and "improvement," have well defined statutory meaning. (Statutes 1863–4, p. 342, sec. 24.)

We submit that the work called for in the specifications amounts to a *reconstruction* or *remacadamization*, and not *improvement* by *additional macadamizing*, and is an enlargement of the resolution.

The City of Oakland, and not the property owners on Broadway, is bound for the improvement of that portion of said street lying between Fourth and Tenth Streets.

Said portion was macadamized in 1864–5, and accepted by the City Council.

"When any street or portion thereof has been or shall hereafter be constructed to the satisfaction of the City Council and Marshal of said city, under such regulations as said Council shall adopt, the same shall be accepted by said Council, and thereafter shall be kept open and improved by the said city, and the expense thereafter to be paid out of the Street Department Fund." (Statutes 1863–4, p. 341, sec. 20.)

A Street Department Fund is provided for in secs. 26 and 27 of said act.

The resolution of the Board of Trustees of plaintiff was wholly illegal and void, as attempting to confer on Walker the whole power of said Board in reference to Oakland street work and for an unlimited length of time. The power thus attempted to be conferred was of a general and discretionary character, and could not be delegated. (Angell and Ames on Corporations, sec. 277; Story on Agency, sec. 13; 1 Parsons on Contracts, marg. p. 83.)

The act under which this action is brought is unconstitutional, as it makes provision for one method of improving Broadway, and another method for improving the other streets. "All laws of a general nature shall have a uniform operation." (Constitution, art. 1, sec. 11.)

Even if said sec. 28 be construed constitutional, it must be held to be a law in itself applying to Broadway.

City Council, if acting under said section, would have no

power to levy an assessment upon property on Broadway *per front foot*. The Legislature alone could confer that power.

*Estee & Boalt*, and *C. A. Tuttle*, for the Respondent.

By the COURT:

The third section of the Act of April 4th, 1864, to authorize the improvement of streets in the City of Oakland, (Statutes 1863–64, p. 333) provides that at the expiration of the publication of the notice of intention, the City Council shall be deemed to have acquired jurisdiction to order the work therein mentioned to be done; and this provision appears to be applicable to all work contemplated by the act. But it is contended that Broadway Street is withdrawn from the operation of this provision by the twenty-eighth section. That section provides that the City Council " shall have full power and authority to grade  *  *  *  or otherwise improve Broadway Street, in such manner and upon such terms as they may deem proper. To authorize such improvements of said street, it shall not be necessary that any petition or petitions shall be presented to said Council, nor shall such improvements be stayed or prevented by any written or other remonstrance or objection, unless such Council deem proper." This section relieves proposed work on that street from the operation of the provision of sec. 3, to the effect that a petition or remonstrance, signed, presented, and filed as therein mentioned, shall " bar any further proceedings in relation to said work for the period of six months," etc., but it does not in terms dispense with the resolution of intention and its publication, nor do we see anything in the act from which that intent could be inferred. In our opinion a resolution of intention and its publication are requisite, in order to vest the Council with jurisdiction to order work to be done on Broadway Street.

The twenty-eighth section of the act, already cited, gives the Council far greater power and discretion in the improvement of Broadway Street than any other street in the city. Its language is, the Council shall have "full power and authority" to improve Broadway Street " in such manner and upon such terms as they

may deem proper." It is unnecessary in this case to determine the limits of the power or discretion which the Council may exercise under the provisions of that section; for, notwithstanding the general words of the section, the Council could not exercise, nor could the Legislature confer unlimited power; but it will be sufficient to determine whether the manner in which the work was ordered to be done was in excess of the powers of the Council. The Council, having acquired jurisdiction of the proposed work by the adoption and publication of the resolution of intention, had full power to order such portion of the work to be done as, in its discretion, it might deem proper. Such power is conferred by the twenty-eighth section, and no reason is assigned why the Council might not exercise the power. There was, therefore, no valid objection to the specifications, or the work as awarded, on the ground that they did not require the macadamizing to be done upon the whole width of the street, or that the amount of the work to be done on the crossings and culverts was left to the determination of the Street Superintendent.

It is urged that the sections of the act relating to Broadway Street are unconstitutional; but we see no ground upon which that proposition can be maintained. No reason is suggested why the Legislature, in providing for the improvement of the streets in a city, may not devise or adopt two or more modes for that purpose, if the condition of the streets, in the opinion of the Legislature, seems to require it. Nor is there any force in the objection that the Council has no power to levy an assessment, in the usual manner, to pay for the improvement.

The resolution of intention describes the work as follows: "The improving Broadway Street and its crossings, from the north line of Fourteenth Street to the wharf in Water Street, by additional macadamizing, by relaying and enlarging gutters, and by constructing two culverts and four cross-walks at each crossing of Broadway Street between said points, except at Twelfth and Water Streets." The work mentioned in the specifications and the contract is not in excess of the work mentioned in the resolution, except the work upon the covers of the cisterns. It is a sufficient answer to the objection in respect to

that work, that it is not mentioned in the contract, and that it does not appear that such work was done, or that any charge therefor was made in making up the assessment.

The macadamizing provided for in the specifications was not a different work from that described in the resolution of intention as " additional macadamizing," and was as properly described by that term as it would have been by the term suggested by the defendant—" re-macadamizing "; and the term employed was not calculated to mislead those who might be interested in the work.

It is insisted by the defendant that the city is liable for the cost of the improvements by virtue of the provisions of sec. 20 of the act above referred to. The section provides that " when any street or portion of a street has been, or shall hereafter be constructed to the satisfaction of the City Council and Marshal of said city, under such regulations as said Council shall adopt, the same shall be accepted by said Council, and thereafter shall be kept open and improved by the said city, and the expense thereof to be paid out of the Street Department Fund; *provided,* that the City Council shall not accept of any portion of a street less than the full width thereof, and one block in length, or one entire crossing." In this case the Council had accepted the work done on the roadway—and not work done on the " full width " of the street. The resolution of the Council did not conform to the provisions of sec. 20, as it did not accept the full width of the street; and it may be doubted whether an acceptance of *work* done on a street is a compliance with that section, for it seems to contemplate the acceptance of a *street,* when improved under such regulations as the Council may have adopted for that purpose. Those regulations are such as specify, among other things, the character of the work to be done on a street before it shall be accepted. The acceptance of work done on a street, though it may extend over the whole width of a street, does not necessarily authorize or require the acceptance of the street.

The contract for the work was made (in form) with the plaintiff, the work was done by the plaintiff, the assessment was issued to the plaintiff, and this action was instituted by the

plaintiff; and if there was a defect in the power attempted to be conferred by the plaintiff upon the President of the corporation, the matters above recited estop both the plaintiff and the city to deny the due execution of the contract; and such being the case, the defendant cannot now be heard to allege that the contract was not executed by the corporation. Were the proceedings irregular in that respect, the remedy of the defendant was by appeal to the Council, as prescribed by the eleventh section of the act as amended. (See Statutes 1869–70, p. 445.) Besides this, the resolution of the corporation, offered in evidence, seems to confer upon the President ample power to make bids and enter into contracts in behalf of the company.

Judgment and order affirmed.

Mr. Chief Justice WALLACE did not express an opinion.